IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY LAWRENCE TAYLOR,       *

                                                        Civil Action No. MJM-22-1071

v.       *       Criminal Action No. MJM-19-515

UNITED STATES OF AMERICA,       *

**MEMORANDUM**

Petitioner Anthony Taylor ("Petitioner") filed a Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255. ECF 56. Respondent United States of America filed a response opposing the motion, ECF 64, and Petitioner filed a reply, ECF 69. An evidentiary hearing is not warranted. *See* Rule 8(a), *Rules Governing § 2255 Proceedings for the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the motion shall be denied and a certificate of appealability shall not issue.

**I.    BACKGROUND**

The facts of the underlying criminal case were stipulated in Petitioner's plea agreement and are not in dispute. ECF 32-1 (Stipulation of Facts). Law enforcement conducted two controlled purchases of crack cocaine from Petitioner in the parking lot of his residence in Prince George's County, Maryland between June 18, 2019, and August 12, 2019. *Id*. On August 28, 2019, law enforcement executed a search warrant at Petitioner's residence and recovered approximately 7.48 grams of crack cocaine in various clear plastic baggies, as well as a scale, a plate, a knife, and razor blades, all containing crack cocaine residue. *Id.* Petitioner was advised of his *Miranda* rights on the scene, and upon waiving them, informed law enforcement that there were two firearms in his bedroom closet. *Id.* Law enforcement indeed found two Smith & Wesson handguns and

1

approximately 55 rounds of ammunition in the closet *Id.* Petitioner admitted that the drugs, drug paraphernalia, and firearms all belonged to him. *Id.*

On October 30, 2019, a grand jury sitting in this district charged Petitioner in a one-count Indictment with felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). ECF 1 (Indictment). Petitioner made his initial appearance before Magistrate Judge Timothy J. Sullivan of this Court on November 8, 2019, and the Office of the Federal Public Defender was appointed to represent him. ECF 7 (Order). In December, Petitioner's family retained Bernard Grimm, Esq. ("Former Counsel") as counsel, at which point he entered his appearance and began representing Petitioner. ECF 20 (Notice of Appearance); *see also* ECF 56-1 (Affidavit of Anthony Lawrence Taylor), at ¶ 4; ECF 56-2 (Affidavit of Yvonne Washington), at ¶ 4.

On February 24, 2020, the United States Attorney's Office filed a two-count Superseding Information charging Petitioner with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). ECF 27 (Superseding Information).

On February 28, 2020, Petitioner appeared before District Judge Paul W. Grimm, waived indictment, and pleaded guilty to both counts of the Superseding Information in accordance with a plea agreement with the government. ECF 30 (Waiver of Indictment); ECF 32 (Plea Agreement). In the plea agreement, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties stipulated to a 24-month sentence of imprisonment for Count One, followed by a consecutive 60-month sentence for Count Two, for a total of seven years (84 months) of imprisonment. *Id.* As part of the plea agreement, the government agreed to dismiss the original Indictment, which, pursuant to 18 U.S.C. § 924(e), carried a mandatory minimum sentence of fifteen years. *Id.* Petitioner attested that he had reviewed every part of the agreement with Former

2

Counsel, that he voluntarily agreed to it, and that he was "completely satisfied with the representation of [his] attorney." *Id.* at 9. The Court explained to Petitioner the nature of a Fed. R. Crim. P. 11(c)(1)(C) agreement, the crimes to which he was pleading guilty, and what the government would have had to prove beyond a reasonable doubt if the case proceed to trial. ECF 52 (Transcript of Plea Hearing), at 6:25–9:16. Petitioner stated that he understood. *Id.* at 12:1–12. The Court explained, and Petitioner responded in agreement, that he was forfeiting his right to appeal. *Id.* at 17:23–18:4. The Court confirmed Petitioner's understanding that the entire agreement between the parties was contained within the written plea agreement. *Id.* at 23:3–9. Petitioner also agreed that the stipulated facts were true and that the government could prove those facts at trial. *Id.* at 24:22–27:7. On May 13, 2021, the Court accepted the plea agreement and sentenced Petitioner to a total term of 84 months of imprisonment and a total three-year term of supervised release. ECF 45 (Judgment).[1]

On September 28, 2021, Petitioner wrote a letter to the Court alleging that Former Counsel had failed to provide him with effective assistance. ECF 49. The Court appointed the Office of the Federal Public Defender to represent Petitioner. ECF 50 (Order). Through counsel, Petitioner subsequently filed a Motion to Vacate Under 28 U.S.C. § 2255, asserting five main grounds for relief, which are summarized as follows:

1) Former Counsel miscalculated Petitioner's criminal history category as IV when it was actually III, and thus believed the government's 7-year plea offer was at the low end of the sentencing guideline range, when it was actually at the high end.

---

[1] Upon consent motion of Petitioner for a reduced sentence under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 821 to the United States Sentencing Guidelines, ECF 71, the Court entered an Order reducing the sentence to 81 months of imprisonment on March 18, 2024, ECF 79, and Amended Judgment on March 20, 2024.

2) Former Counsel failed to present key mitigating evidence during plea negotiations.

3) Former Counsel misadvised Petitioner that he was eligible to reduce his prison term by a year upon completion of the Residential Drug Abuse Treatment Program ("RDAP"), when he was in fact ineligible because of his § 924(c) conviction.

4) Former Counsel misadvised Petitioner that he was eligible for time credits under the First Step Act, when he was in fact ineligible because of his § 924(c) conviction.

5) Former Counsel failed to inform Petitioner that Former Counsel was under investigation for legal ethics violations (for which he was later disbarred in Washington, D.C. and Maryland).

ECF 56 at 1–2. The petition is supported by affidavits from Petitioner and his mother, among other exhibits. ECF 56-1; ECF 56-2. Petitioner requests that this Court conduct a hearing on the petition and vacate the Judgment. *Id.* at 19. The government filed a response in opposition to the motion and request for a hearing, arguing that Plaintiff has failed to allege any facts that would entitle him to relief and that his claims are contradicted by the record. ECF 64. and Petitioner filed a reply. ECF 69.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner serving a federal sentence in custody may seek to vacate, set aside, or correct his sentence on the ground that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack[.]"

"In deciding whether to grant an evidentiary hearing [on a habeas petition], a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v.*

*Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). If, on the other hand, "the record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (declining to hold an evidentiary hearing where the factual record precludes the possibility of relief). Such a determination falls within the district court's discretion. *See Shriro*, 550 U.S. at 475.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see also Buck*, 137 S. Ct. at 775.

As to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' and not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The

5

standard for assessing such competence is "highly deferential" and carries a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "highly deferential" and not based on hindsight. *Stokes v. Stirling*, 10 F. 4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" the representation. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong" in the context of a guilty plea, a petitioner must show that there is a reasonable probability that he would have insisted on going to trial but for the counsel's errors or that the errors otherwise affected the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

## IV.   ANALYSIS

### A.   Miscalculation of Criminal History Category During Plea Discussions

Petitioner's first argument is that he received ineffective assistance when Former Counsel misadvised him that his criminal history category was IV, when it was actually III. ECF 56 at 14–15. He contends that this miscalculation of criminal history category prejudiced him because the sentencing guidelines range is the starting point of sentencing decisions and Former Counsel "engaged in plea discussions with a false understanding of the sentence that was appropriate for his client." *Id.* at 17 (citing *United States v. Green*, 996 F.3d 176, 186 (4th Cir. 2021)).

Petitioner fails to show he was prejudiced by any miscalculation of his criminal history category by Former Counsel during his representation. As the government points out in its response, the stipulated seven-year sentence Petitioner received was within the advisory guidelines range properly computed by the Court using the correct criminal history category of III. Perhaps more importantly, the stipulated seven-year sentence was significantly below (less than half) the 15-year statutory minimum sentence that would have applied had Petitioner been convicted of the offense charged in the original Indictment.[2] Indeed, given his criminal history, the facts Petitioner admitted in connection with his guilty plea would have supported conviction for the 18 U.S.C. § 922(g)(1) violation charged in the original Indictment. Dismissal of the original indictment was a significant benefit to Petitioner, and he offers no reason to believe that the government would have agreed to a sentence lower than seven years if Former Counsel had correctly computed his criminal history category to be III instead of IV. In these circumstances, Petitioner fails to demonstrate a reasonable probability that he would have insisted on going to trial but for Former Counsel's miscalculation of his criminal history category or that the error otherwise affected the terms of his plea agreement. *See Hill*, 474 U.S. at 59.[3]

---

[2] "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." 18 U.S.C. § 924(e)(1). There is no dispute that Petitioner's criminal history would have qualified him for this sentencing enhancement at the time of his sentencing. *See* ECF (Presentence Investigation Report).

[3] Courts have found prejudice lacking in similar cases where defense attorneys miscalculated applicable sentencing guideline ranges. In *Brown v. United States*, the district court found the petitioner was not prejudiced by his trial counsel's incorrect advice that the applicable sentencing guideline range was 228 to 270 months, even when he stipulated to a 20-year sentence within that incorrect range and the correct guideline range was well below 20 years (181 to 211 months), because he faced a mandatory consecutive 30-year sentence without the plea agreement. No. 5:05-CR-237-RLV-DCK, 2013 WL 66154, at *6 (W.D.N.C. Jan. 4, 2013). *See also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (counsel's guideline miscalculation did not result in prejudice even though the defendant agreed to a 210-month

Moreover, Petitioner fails to demonstrate that Former Counsel's miscalculation of his criminal history category is significant enough to overcome the strong presumption of professional competence and "amounted to incompetence under 'prevailing professional norms.'" *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Second Circuit cases cited by Petitioner are inapposite. In *United States v. Gordon*, the court found defense counsel's performance deficient where he advised his client that he would likely be sentenced to 120 months if found guilty, when the sentencing guidelines range was actually 262 to 327 months. 156 F.3d 376, 377 (2d Cir. 1998). In *Cullen v. United States*, the court found defense counsel's performance deficient where he advised his client that the sentencing guidelines range was 57 to 71 months, when it was actually 121 to 151 months. 194 F.3d 401, 402 (2d Cir. 1999). In *Aeid v. Bennett*, the Second Circuit summarized *Gordon* as "finding deficient representation where defense counsel *grossly underestimated* defendant's maximum sentencing exposure," and *Cullen* as "finding deficient representation where defense counsel provided *significantly inaccurate* calculation of sentencing upon a plea[.]" 296 F.3d 58, 62–63 (2d Cir. 2002) (citations omitted) (emphases added).

Here, Former Counsel's miscalculation of Petitioner's criminal history category as III instead of IV is not so "grossly" or "significantly inaccurate" as to amount to professional incompetence. In *Gordon* and *Cullen*, there were wide gulfs between the advised and actual sentencing guideline ranges, while in the instant case, Petitioner received a sentence that was within both the misadvised and correct guidelines ranges.

*Green* is also inapplicable here. In *Green*, the Fourth Circuit held that the district court's error in computing the sentencing guidelines range affected the defendant's substantial rights when

---

sentence, above the high end of the correct range, because he faced a maximum sentence of 160 years if convicted at trial).

8

the error raised the sentencing guideline range from 77-to-96 months to 151-to-188 months, and the district court imposed a sentence well above the lower, correct range. 996 F.3d 186. Again, the difference between the correct range and the erroneous range at issue in *Green* was substantial. Moreover, there is no dispute in the instant case that the Court correctly calculated Petitioner's guidelines range at sentencing and imposed a sentence within that range, to which the parties had stipulated pursuant to Fed. R. Crim. P. 11(c)(1)(C).[4]

Accordingly, Petitioner's claim for ineffective assistance of counsel fails as to Former Counsel's alleged miscalculation of Petitioner's criminal history category during plea negotiations. No hearing is warranted on this claim because, even if Former Counsel misadvised Petitioner about his criminal history category, as Petitioner claims, he cannot show that Former Counsel was constitutionally deficient in doing so or that Petitioner was prejudiced by this deficiency.

### B. Failure to Present Mitigation Package During Plea Discussions

Petitioner's second argument is that Former Counsel's performance was deficient because he failed to present a package of mitigating evidence and information to the government during the plea negotiations. ECF 56 at 15. Specifically, Petitioner avers, Former Counsel failed to conduct interviews of Petitioner's family members, collect mitigating evidence, and present letters written by Petitioner's loved ones to the government in connection with plea discussions. *Id.* Petitioner argues that, had this mitigation material been presented to the government during the plea negotiations, "it is likely that the government would have offered [him] a plea deal imposing a shorter sentence or . . . permitted him to advocate for a sentence less than seven years." *Id.* at 18.

---

[4] The Fourth Circuit has stated that "a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is contractual and not based upon the Guidelines." *United States v. Ford*, 491 Fed. App'x. 433, at *1 (4th Cir. 2012) (citing *Cieslowski*, 410 F.3d at 364).

9

Petitioner fails to offer any evidence or reason to believe that the presentation of a mitigation package to the government during plea negotiations is a "prevailing professional norm[]" among criminal defense attorneys, rather than a deviation from "best practices" in plea negotiations. *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). Petitioner also fails to show or provide any reason to suggest that presenting a mitigation package would have affected the government's position during plea negotiations in this case.

Petitioner's reliance on *Williams v. Taylor*, 529 U.S. 362, 396 (2000), and *Wiggins v. Smith*, 539 U.S. 510 (2003), is misplaced. In each of these cases, the Supreme Court held that defense counsel's failure to compile and present mitigating evidence during the penalty phase of a capital case to be deficient. The Court rejects Petitioner's argument that the failure to present mitigation evidence to the government during plea negotiations "should be judged by the same standard." ECF 56 at 15. The presentation of a mitigation case in court during the penalty phase of a capital case is a far cry from private plea negotiations between a defense attorney and prosecutor in a non-capital case. *See Strickland*, 466 U.S. at 704–05 (Brennan, J., concurring) ("Time and again the Court has condemned procedures in capital cases that might be completely acceptable in an ordinary case."). Indeed, during plea negotiations, the prosecutor plays a role that is fundamentally distinct from that of a jury in a capital case or even a sentencing court in a non-capital case.

Petitioner identifies several cases where defendants obtained Fed. R. Crim. P. 11(c)(1)(C) stipulations to sentences below seven years for 18 U.S.C. § 924(c) violations. ECF 56 at 18–19. These cases are inadequate to support a reasonable probability that the outcome of plea negotiations would have been more favorable to Petitioner had Former Counsel presented a mitigation package to the government, assuming Former Counsel failed to do that. Petitioner offers nothing to suggest that mitigation packages were presented in the cases he cites or that they

10

affected the plea terms in those cases. Parties' positions as to an appropriate sentence and a sentencing court's decision in a particular case all involve highly individualized assessments that are specific to the facts of the case. *See United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (sentencing court required to "conduct an 'individualized assessment' of the facts and arguments presented") (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court's review of the cases cited by Petitioner reflects variation among them with respect to the defendants' histories and characteristics and the nature and circumstances of their offenses. *See* 18 U.S.C. § 3553(a)(1). Furthermore, there may be numerous other factors unknown to this Court in each of the cases that affected the parties' positions during plea negotiations.

In sum, Petitioner fails to show that Former Counsel's performance was deficient in omitting to present a mitigation package to the government during plea negotiations or that presenting the mitigation package would have resulted in a more favorable plea agreement. For these reasons, Petitioner's second ground for relief is without merit.[5] No hearing is warranted on the matter because, even assuming Former Counsel failed to compile and present a mitigation package during plea negotiations, Petitioner cannot show that Former Counsel was constitutionally deficient in this omission or that Petitioner was prejudiced by it.

### C. Incorrect Advice Regarding Reduction of Prison Term

Petitioner next argues that Former Counsel misadvised him that he would be able to reduce his prison term by completing RDAP and by earning good time credits under the First Step Act, when Petitioner was actually ineligible for these programs due to his 18 U.S.C. § 924(c)

---

[5] Any suggestion that Petitioner was also prejudiced at sentencing by any failure by Former Counsel to present mitigating evidence to the Court is also meritless. *See* ECF 56 at 18 ("Mr. Grimm's failure to present similarly powerful mitigating evidence at both the plea-bargaining stage and sentencing in Mr. Taylor's case deserves similar treatment."). At sentencing, Petitioner and the government stipulated to a seven-year sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C), and the Court imposed this agreed-upon sentence.

conviction. ECF 56 at 16. Petitioner asserts that Former Counsel should have known that Petitioner was ineligible. *Id.* He contends that he was prejudiced by this mistake because Former Counsel, had he known of Petitioner's ineligibility, "may have used this information to pursue a plea deal imposing a lesser sentence." *Id.* at 19. The government argues that these claims are contrary to statements Petitioner made during his Rule 11 plea colloquy—that he was not induced to plead guilty by any promises outside the written plea agreement—and that the written agreement makes no mention of RDAP or the First Step Act. ECF 64 at 29.

Unless extraordinary circumstances bid otherwise, courts should not give credence to a petitioner's allegations that contradict the sworn statements he made during a plea colloquy. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citation omitted). A defendant's "solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity,'" such that "they present 'a formidable barrier in any subsequent collateral proceedings.'" *United States v White*, 366 F.3d 291, 295–96 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)). In both *Studivant v. United States*, Crim. No. RDB-15-164, 2019 WL 2359588, at *3–4 (D. Md. June 3, 2019), and in *Roberson v. United States*, No. 5:07-CR-314-FL, 2011 WL 5101573, at *4 (E.D.N.C. Oct. 26, 2011), the court rejected petitioners' arguments that they received ineffective assistance of counsel when, in connection with pleading guilty, they were misadvised by their attorneys that they could receive credit against their prison sentences by participating in RDAP. In each case, the defendant had attested in his Rule 11 colloquy that no promises were made to him outside of his plea agreement to convince him to plead guilty. *Studivant*, 2019 WL 2359588, at *4; *Roberson*, 2011 WL 5101573, at *4.

In the instant case, Petitioner affirmed in open court during his plea colloquy, under oath, that he voluntarily agreed to a seven-year prison sentence as part of his plea agreement and that he

was not induced to plead guilty by any promises outside the written agreement. Plea Hr'g Tr. at 23:3–9. These statements contradict Petitioner's suggestion now that his guilty plea was contingent on his eligibility to receive credit against his prison term via RDAP or the First Step Act. The Court cannot find any reasonable probability that, had he been advised of his ineligibility, Petitioner would not have entered into the plea agreement. Accordingly, the Court finds that Petitioner's third and fourth grounds for relief are without merit, and that no hearing is warranted on the matter.

### D.  Former Counsel's Ethics Investigation and Disbarment

Petitioner finally argues that Former Counsel's performance was deficient because he concealed the fact that he was under investigation for legal ethics violations and that this investigation "may have distracted [Former Counsel's] attention away from [the] case." ECF 56 at 16. He points out that Former Counsel was eventually disbarred in Washington, D.C. and Maryland for ethics violations. *Id.* Petitioner avers that, had he known about the ethics investigation, he would have hired a different and more competent attorney. *Id.* at 19.

The government notes that Former Counsel was disbarred a year-and-a-half after Petitioner entered his plea agreement and that Petitioner fails to offer any evidence that Former Counsel was under investigation or aware he was under investigation at the time. ECF 64 at 30. Further, the government argues that Former Counsel's ethical violation—the misappropriation of client funds in a separate case—was unrelated to his representation of Petitioner. *Id.* at 30–31.

There is no "*per se* rule of unconstitutional ineffectiveness in any situation in which an attorney has undertaken representation of a criminal defendant while such an attorney is under investigation for disbarment." *Roach v. Martin*, 757 F.2d 1463, 1480 (4th Cir. 1985). A court may presume ineffectiveness in this situation "only if the defendant demonstrates that counsel 'actively

represented conflicting interests' and 'that actual conflict of interest adversely affected his lawyer's performance.'" *Id.* at 1479 (quoting *Strickland*, 466 U.S. at 692).

In the instant case, there is no dispute that Former Counsel was disbarred for conduct in an entirely separate representation and for reasons unrelated to the deficiencies alleged in this case—that is, misappropriating client funds. ECF 64-4 at 6. Petitioner does not allege that Former Counsel's ethical violations created a conflict of interest that impaired his representation of Petitioner. Petitioner's suggestion that the ethics investigation "may have distracted" Former Counsel from Petitioner's case is merely speculative and without factual support. ECF 56 at 16. There is no indication that the ethics investigation of Former Counsel even occurred during his representation of Petitioner or that it affected Petitioner's case in any way. Accordingly, the Court finds Petitioner's fifth ground for relief to be meritless.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed. A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

## VI. CONCLUSION

A separate Order denying the motion to vacate and denying a certificate of appealability follows.

| | |
|---|---|
| _3/20/24_ | _/S/_ |
| Date | Matthew J. Maddox |
| | United States District Judge |